W. S. SUDDERTH and others v. JOSEPH BRITTAIN, Sheriff and others.

*County Commissioners — Levy of Taxes.*

1. County Commissioners have no power to assess additional taxes for previous years upon land on a subsequent increased valuation, after the taxes for such previous years have been paid.

2. The understatement of the area of a tract of land by the person listing it for taxation even if it be fraudulent, does not warrant the County Commissioners in going back and levying taxes upon the difference between the listed and actual area, after the payment of the taxes originally levied.

CIVIL ACTION, tried at Fall Term, 1876, of BURKE Superior Court, before *Henry, J.*

His Honor made an order restraining the defendants, Sheriff and Board of Commissioners of said County, from the collection of taxes assessed upon the land described in the complaint and alleged to be due. The facts are sufficiently stated by Mr. Justice RODMAN in delivering the opinion of this Court.

The defendants appealed from said order.

*Mr. A. C. Avery,* for plaintiff.
*Mr. G. N. Folk,* for defendants.

RODMAN, J. The very difficult hand-writing of this record and the great mass of irrelevant matter which it contains, make it extremely difficult to ascertain what are the pertinent facts and what the questions presented for our determination.

We think however that the facts stripped of all unnecessary detail, and so far as they are material to our decision, which appear not to be disputed, are these:

The plaintiffs, or those whom they represent, in 1871–'2–'3–'4–'5, owned and still own a certain piece of land lying in several townships of Burke County. In 1871–'2–'3–'4, they listed it for taxes as containing 1,450 acres. It was valued by the proper County officers at fifty cents per acre, and the taxes at that valuation were duly paid for those years. In November, 1875, the County Commissioners, supposing that the real area was greatly in excess of that at which it had been listed by plaintiffs, caused it to be listed at 12,245 acres, and valued it at 33 cents per acre and ordered the Sheriff to collect taxes upon that valuation for 1871–'2–'3–'4–'5. The taxes for 1875 were also paid. but on what valuation does not distinctly appear. The plaintiffs demand an injunction against the collection of any taxes for those years, (1871'2–'3–'4 and 5) on the ground that they have paid all that were duly levied.

The question presented is thus seen to be this; Could the County Commissioners of Burke, upon a valuation of land made in 1875 or 1876, collect taxes upon that land for previous years, after the taxes upon the valuation of those years had been paid? Can a valuation be retrospective? The answer depends upon our legislation. Battle's Revisal ch. 102, enacts as follows;

*Sec.* 1. The township trustees on 1st April in each year, (or thereabouts, for the time seems to be left somewhat indefinite) shall list all lands for taxes.

*Sec.* 16. On the third Monday in May, the County Commissioners shall revise such lists and valuation reported to them.

*Sec.* 21. Tax lists shall be delivered to the Sheriffs for collection, on or before the first Monday in July.

*Sec.* 24. Provides for a re-valuation in certain cases where by accident the value has decreased, *before the tax becomes due.*

*Sec.* 25. Provides that if *before the tax becomes due*, the property has increased 25 per cent in value, otherwise than by reason of improvements made by the owner, the valuation may be increased.

This is the only legislation pertinent to the question that we are aware of. County Commissioners are created by legislation. They have no powers not conferred on them by some Act of the Legislature. We know of no Act which empowers them to alter the valuation of property after the tax has become due. They cannot do so after the tax lists have been delivered to the Sheriffs except in cases specified in sections 24 and 25. The necessary implication from these sections is that the power to alter is denied to the Commissioners in cases not covered by them. The express grant of the power limited as to time, excludes the idea of the previous existence of the power unlimited as to the time in which it may be used. If the power claimed by the Commissioners had existed, these sections would have been unmeaning and superfluous.

It is argued however that the statement of the area by the plaintiffs, was so grossly less than the real area, as to imply fraud; and that in such case the Commissioners may go back and levy the taxes thus withheld.

The mere understatement of the area is not proof and is very slight evidence of a fraudulent understatement.

The area of very few tracts of wild mountain or swamp land is accurately known or capable of being ascertained except at an expense exceeding the value of the land. Old grants when carefully surveyed are generally found to overrun the quantity called for; but sometimes by reason of the inclusion of prior grants, they fall short.

Land is not now taxed uniformly by the acre as it once was.

The County officers are required to value the land and in

such valuation the quantity is not an element of sale or even of primary importance. Speaking generally, the land of an owner which is occupied together as one piece is to be valued as a whole. The Act (§ 9) requires the owner of land in listing it to state the quantity owned by him in the township and *to describe it by its name if it have one, or otherwise in such way that it may be identified.* The valuers have to ascertain the market value, and in this, quantity is an aid but not an absolute guide. Many other things must be considered, as the situation, as in a city or in the country, the income which is or may be derived from it in its present state, the demand for that sort of property, and others which will readily occur. For this reason the land is required to be identified by description. The Township Trustees who value in the first instance are presumed to be informed of all the circumstances affecting the value of all the lands in their Township, and the revising Commissioners may examine witnesses if they think proper. The valuers in the course of their valuation may, if they find it convenient, put the land at so much per acre in the first instance, but they must in every instance at last value it as a whole, as in no other way can the percentage of taxation be applied and the tax be calculated as is required to be done, before giving the lists to the Sheriff. But if it were admitted that the plaintiffs had knowingly understated the quantity, it is not seen how this fraud could give to the County Commissioners a power to re-value, which the Act has not given. If they can go back one year they may go back indefinitely. If the ownership of the land at the date of the re-valuation continued the same that it had been in the previous years, such a power would be impolitic and evil, as it would expose all men, who whether ignorantly or wilfully had at any time understated the quantity of their land, although the quantity had not sensibly influenced the valuation, to vexatious or

malicious prosecutions. But if the land had changed owners either by division of an inheritance or by purchase during the years for which the Commissioners undertook to review the valuation, the consequences would be unjust in the extreme. Taxes duly levied are a lien on land until paid, no matter into whose hands it may go. An heir on partition of the realty of his ancestor or a purchaser may readily inform himself, whether the taxes appearing on the tax lists for two years preceding have been paid, and he is bound to do so. They are open incumbrances. But he could in no way inform himself of the liability of the land to taxes upon a new valuation in consequence of an under-valuation years before. The possibility of such a secret incumbrance being sprung upon a purchaser would discourage sales. Fortunately the Act of Assembly gives no countenance to such a claim. The County Commissioners have time from the day on which the valuations are returned to them by the Township Trustees, up to the time when the tax lists are delivered to the Sheriffs, in which to revise the valuations and in the cases mentioned in sections 24 and 25, they have up to the day when the taxes are due. After that time their power to act on the subject ceases.

We content ourselves with stating the general principles which govern this case. We cannot gather with certainty when or upon what valuation the taxes of 1875 were paid. Any questions of fact respecting the taxes of 1875 and 1876, are left open to be decided if necessary in the Superior Court.

It was objected by defendants that plaintiffs might have obtained all the relief to which they were entitled upon an appeal from the Board of Commissioners to the Superior Court. This objection was not pressed before us no doubt because the parties desired a decision on the merits. The orders of the Board respecting the re-valuation were not very

definite and this taken in connection with the prolonged negotiation for a compromise differ this case from an ordinary one where property is improperly valued. Without discussing the question, we think under all the circumstances, the present mode of seeking relief may be sustained.

There is no error in the judgment appealed from and it is affirmed. Case remanded. Let this opinion be certified.

PER CURIAM.         Judgment affirmed.